NICOLA T. HANNA
United States Attorney
PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division
JUDITH A. HEINZ (Cal. Bar No. 176264)
Assistant United States Attorney
Senior Litigation Counsel, National Security Division
JAMES C. HUGHES (Cal. Bar No. 263878)
Assistant United States Attorney
Tax Division
MELANIE SARTORIS (Cal. Bar No. 217560)
WILLIAM M. ROLLINS (Cal. Bar No. 287007)
Assistant United States Attorneys
Terrorism and Export Crimes Section
KHALDOUN SHOBAKI (Cal. Bar No. 232864)
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section
       1500 United States Courthouse
       312 North Spring Street
       Los Angeles, California 90012
       Telephone:     (213) 894-7280/5615/7407/0759
       Facsimile:     (213) 894-2927
       E-mail:   judith.heinz@usdoj.gov
                 james.hughes2@usdoj.gov
                 melanie.sartoris@usdoj.gov
                 william.rollins@usdoj.gov
                 khaldoun.shobaki@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-50(B)-JAK |
|---|---|
| Plaintiff, | GOVERNMENT'S CONSOLIDATED OPPOSITION TO DEFENDANT YI-CHI SHIH'S MOTIONS IN LIMINE NOS. 3 AND 4 TO EXCLUDE EVIDENCE OF CHINESE GOVERNMENT PRACTICES |
| v. | |
| YI-CHI SHIH, aka "Yichi Shih," aka "Yuqi Shi," et al, | Hearing Date: April 4, 2019 Hearing Time: 8:30 a.m. |
| Defendants. | Location:   Courtroom of the Hon. John A. Kronstadt |

1    Plaintiff United States of America, by and through its counsel

2  of record, the United States Attorney for the Central District of

3  California and Assistant United States Attorneys Judith A. Heinz,

4  James C. Hughes, Melanie Sartoris, William M. Rollins, and Khaldoun

5  Shobaki, hereby files its consolidated opposition to defendant Yi-Chi

6  Shih's motion in limine nos. 3 and 4 to exclude evidence of Chinese

7  government practices.

8    This motion is based upon the attached memorandum of points and

9  authorities, the files and records in this case, and such further

10  evidence and argument as the Court may permit.

11  Dated: March 14, 2019            Respectfully submitted,

12                                   NICOLA T. HANNA
                                     United States Attorney
13
                                     PATRICK R. FITZGERALD
14                                   Assistant United States Attorney
                                     Chief, National Security Division
15
                                            /s/
16                                   _____
                                     JUDITH A. HEINZ
17                                   JAMES C. HUGHES
                                     MELANIE SARTORIS
18                                   WILLIAM M. ROLLINS
                                     KHALDOUN SHOBAKI
19
                                     Assistant United States Attorneys
20
                                     Attorneys for Plaintiff
21                                   UNITED STATES OF AMERICA

22

23

24

25

26

27

28

2

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3         For at least ten years, from no later than January 2006 through

4    no earlier than January 2016, defendant Yi-Chi Shih ("defendant")

5    conspired to obtain and export unlawfully from the United States to

6    the People's Republic of China ("PRC") items controlled for national

7    security reasons under United States law.  Defendant's motions in

8    limine numbers 3 and 4 seek to exclude evidence regarding the Chinese

9    government's interest in United States military technology and items,

10   including the MMICs at issue in the case.  While styled as distinct

11   motions, they seek to exclude the same category of evidence for many

12   of the same reasons.  Accordingly, the government files a

13   consolidated response to defense motions in limine nos. 3 and 4.

14        Despite the charges in the case and the overwhelming evidence

15   produced in discovery, defendant states in motion in limine no. 3

16   that the case "is not about national security" and that testimony

17   "about Chinese efforts to obtain restricted technology is irrelevant

18   to the charges."  (Mot. No. 3 at 1.)  Defendant is wrong.  He seeks

19   to exclude testimony of government witnesses, specifically Dr.

20   Sandison and Federal Bureau of Investigation ("FBI") Special Agent

21   Robert Berger,[1] under Federal Rule of Evidence ("FRE") 403 arguing

22   that their testimony is "irrelevant to the charges" and "inflammatory

23   in the current political environment."  (Id.)  He claims the

24

25   _____

26        [1] The government has addressed the anticipated testimony of
     these witnesses in greater detail in its opposition to defendant's
27   motion in limine number 2, which also seeks to exclude their
     testimony.  Rather than repeat it here, the government incorporates
28   that discussion and the exhibits to the government's opposition
     herein.

1  government is attempting to put defendant "on trial based on his

2  ethnicity," in violation of the Fifth Amendment.  (Id.)

3      In motion in limine no. 4, defendant similarly seeks to exclude

4  such evidence on FRE 401, 402, and 403 grounds, again arguing,

5  "evidence relating to Chinese companies or individuals with no

6  discernable connection to the crimes charged here is utterly

7  irrelevant," "unfairly prejudicial," and a "waste" of time.  (Mot.

8  No. 4 at 1-2.)[2]

9      Subsequent to defendant's filing this motion in limine, on March

10 14, 2019, the government disclosed Peter L. Mattis, M.A. to testify

11 regarding the following: (1) the efforts and methods used by entities

12 and individuals in the People's Republic of China ("PRC") to obtain

13 information about restricted U.S. technology, including

14 semiconductors, to enhance and promote the PRC's MMIC production

15 capabilities; (2) the control of Qing'n International Trading Co.,

16 Ltd, aka Qing'an International Trading Group ("QTC") by the PRC's

17 People's Liberation Army, and the use of front companies by QTC to

18 avoid international scrutiny in the procurement of export controlled

19 goods and sensitive technologies; and (3) the stated policy of the

20 PRC to develop a powerful military and to do so by means of military-

21 civil fusion like that shown by the evidence in this case with

22 respect to QTC, Chengdu Gastone Technology Co., Ltd., Chengdu

23 Electronics Technology Group Corporation 29 Research Institute ("CETC

24 29"), and other entities.  The government also expects that Mr.

25 Mattis will provide some background and explanatory testimony about

26

27      [2] Defendant also suggests the government has not complied with
   discovery obligations.  The government has provided defendant with
28 extensive discovery, is mindful of its discovery obligations, and
   will continue to comply with them.

1  Chinese business organizations and structures, as it pertains to the

2  entities at issue in this case.  Although, understandably,

3  defendant's motions do not specifically seek to exclude the testimony

4  of expert witness Peter L. Mattis, M.A. by name, the government

5  recognizes the general category of information the motions seek to

6  exclude includes that testimony as well.

7      The government does not intend, as defendant suggests, to

8  present evidence "with no discernable connection to the crimes

9  charged" or the defendant and his co-conspirators.  (Id.)  Rather,

10  the government will present evidence consisting of defendant's own

11  documents and those of his co-conspirators, including investors in

12  China.  (See e.g., Ex. B to Gov.'s Opp. to Def. MIL 2 (attaching

13  defendant's power point).)  Government witness testimony and other

14  evidence on these topics will provide the appropriate context to the

15  jury to understand the evidence and decide the facts and charges in

16  this case.

17      The government's presentation of such evidence will square

18  directly with defendant's conspiracy with individuals and entities to

19  build a foundry in China to fill the PRC's void with respect to MMICs

20  that have civilian and military applications; to illegally export

21  items to the PRC that are controlled for export due to national

22  security reasons; to defraud a United States company to obtain

23  military-grade, export-controlled MMICs; to launder money to pay for

24  those MMICs; to conceal his bank accounts in the PRC from the United

25  States government to cover up his crimes; and to lie to the FBI about

26  the export and testing of the MMICs.  (See Dkt. 223 Second

27  Superseding Indictment.)  Defendant suggests the government seeks to

28  prove "guilt by association."  (Mot. 4 at 2.)  To the contrary, the

1  government seeks to prove defendant's conspiracy and knowing and

2  willful criminal acts through his own words and deeds and those of

3  his co-conspirators.[3]  However, those words and deeds often took

4  place in a foreign country, where the government controlled and

5  financed the deeds at issue, and those deeds involved technology

6  unfamiliar to most people, expert testimony is essential to the

7  jury's understanding of the evidence.

8  **II.   THE EVIDENCE IS ADMISSIBLE UNDER THE FEDERAL RULES OF EVIDENCE**

9       **A.   The Evidence is Relevant to the Crimes Charged**

10      The government will not seek to introduce at trial irrelevant

11 evidence regarding Chinese individuals and entities that are

12 unrelated to defendant or the charges.  The government will, however,

13 provide evidence through witnesses and documents that explain

14 defendant's efforts in the PRC to develop MMICs with military

15 applications for the benefit of the PRC, and to describe the

16 individuals and entities with which he was involved.  Defendant's

17

18

---

19      [3] Defendant's motions contain multiple media and political
references that have no place in this criminal prosecution and appear
20 intended to inflame emotions and "the current political environment."
(Mot. No. 3 at 1; see id. at 3 (discussing the "media attention"
21 about the Huawei investigation as "salacious and inflammatory"); id.
at 4 (discussing trade-related actions involving China by the "Trump
22 administration"); Mot. No. 4 at 4 (discussing the "highly publicized"
Huawei indictment.").  The government objects and respectfully
23 requests the Court to admonish defendant to refrain from such tactics
during trial.  The government will not elicit testimony at trial
24 regarding the media attention or prosecution involving Huawei.  The
term appears in the evidence.  (See, e.g., Exhibit B to the
25 Governments Opposition to Defendant's Motion in Limine No. 2 to
Exclude Testimony of Government Expert Witnesses (attaching
26 defendant's power point) at i-40 (listing "Huawei," among others, on
a list of "Major Customers").)  The term "Huawei" may not be
27 understood by all jurors, so a testifying case agent will briefly
explain, for example, that it is a large Chinese telecommunications
28 company.  The government will restrict any testimony to the facts and
circumstances of this case.

4

1   efforts to use FRE 401, 402, and 403 to deprive the jury of this

2   highly probative evidence should be rejected.

3        FRE 402 states "relevant evidence is admissible" unless

4   precluded by the Constitution, a federal statute, the FRE, or other

5   rules prescribed by the Supreme Court.  Fed. R. Evid. 402.  FRE 401

6   provides that "[e]vidence is relevant" if "(a) it has *any* tendency to

7   make a fact more or less probable than it would be without the

8   evidence; and (b) the fact is of consequence in determining the

9   action."  Fed. R. Evid. 401 (emphasis added).  "[T]o be 'relevant'

10  evidence need not be conclusive proof of a fact sought to be proved

11  or even strong evidence of the same.  All that is required is a

12  'tendency' to establish the fact at issue . . . the fact to be proved

13  may be ultimate, intermediate, or evidentiary; it matters not, so

14  long as it is of consequence in the determination of the action."

15  United States v. Curtin, 489 F.3d 935, 943 (9th Cir. 2007) (en banc).

16  The information that defendant seeks to exclude far surpasses this

17  low threshold.

18       The information defendant asks the Court to exclude is relevant

19  to prove defendant's knowledge and willfulness in violating IEEPA and

20  the other crimes charged in the Second Superseding Indictment.  As an

21  example, Exhibit B to the Government's Opposition to Defendant's

22  Motion in Limine No. 2 to Exclude Testimony of Government Expert

23  Witnesses includes one of defendant's many power points reflecting

24  his plan to build a semiconductor manufacturing foundry in China.  As

25  demonstrated in the document, *inter* alia, the evidence in the case

26  includes equipment required to build defendant's foundry, the fab

27  layout, and personnel, including defendant (id. at i-26, i-27, i-28,

28  i-29, i-32, i-33, i-34, i-48, i-69 through 76); analysis of the

5

1   global semiconductor market (which does not include any foundries in

2   China), costs, and profitability (id. at i-2, i-3, i-13, i-30, i-56);

3   information about investors in defendant's foundry (id. at i-36);

4   uses for the MMICs, including civilian and military (id. at i-4

5   through i-12, i-20, i-24, i-36, i-43, i-51); defendant's desire to

6   expand the semiconductor market into China (id. at i-36, i-37, i-38,

7   i-39, i-40, i-41); the "Superior Performance of GaN," (id. at i-50,

8   see also i-52, i-53); and other technical information that a jury

9   cannot be expected to understand without the aid of expert testimony.

10          Defendant's own power point includes a map of the world and

11  states, "Semiconductor industry is one of the key strengths of a

12  country.  We plan to fill the gap of III-V semiconductor capability

13  in China."  (Id. at i-13.)  Defendant's "investment objectives"

14  depict both military and civilian applications.  (Id. at i-36.)  The

15  slide describes the "[o]bjectives we strive for" as including "within

16  the first five years . . . achieve market dominance: by 2015, #1 in

17  China, by 2020, #1 in the world."  (Id.)  Clearly, the information

18  defendant seeks to exclude about China is highly relevant to the

19  case.

20       Dr. Sandison's testimony, for example, will assist the jury to

21  understand the significance of the fab layout and equipment depicted

22  in the power point, including the slide referring to "embargoed

23  equipment;" defendant's business plans and strategies to manufacture

24  MMICs in China; and their civilian and military uses, including these

25  items in the context of the foundry being in China for purposes of

26  China.  (See, e.g., id. FBI 302 of Interview with Dr. Sandison at

27  YC_SHIH_00013944-13947, discussing the power point (referred to as

28  file 2013-08-10)).)

6

1      Additionally, Mr. Mattis's testimony will, for example, assist

2  the jury to understand the context for the military references in

3  defendant's power point, including that one of the "shareholders"

4  identified in the power point, Qing'n International Trading Co., Ltd,

5  aka Qing'an International Trading Group ("QTC"), is controlled by the

6  PRC's People's Liberation Army, and that QTC uses front companies to

7  avoid international scrutiny in the procurement of export-controlled

8  goods and sensitive technologies.  (See, e.g., id. at i-36.)

9  Moreover, Mr. Mattis will be able to explain to the jury that another

10  of the named "shareholders" in the power point is CETC 29.  This

11  slide also reflects defendant's "investment objectives" depicting

12  both military and civilian applications, and describes the objective

13  as being "#1 in China" by 2015, and "#1 in the world" by 2020.  (Id.

14  at i-36.)

15      Given defendant's proposed jury instructions, the government

16  expects defendant to challenge the government's proof of his

17  knowledge and willfulness.  The evidence (here, a power point

18  prepared by defendant and found on one of his digital devices)

19  showing the Chinese government's interest in the MMICs tends to prove

20  defendant knew the items were controlled for export to the PRC for

21  national security reasons and is directly relevant to establishing

22  the motive for the conspiracy and other charged activity, and

23  defendant's knowledge and willfulness when he committed the charged

24  crimes.  See United States v. Mousavi, 604 F.3d 1084, 1092-94 (9th

25  Cir. 2010).

26      **B.    The Evidence is Not Unfairly Prejudicial**

27      Defendant's argument that the evidence should be excluded under

28  Rule 403 fails.  FRE 403 provides, that a "court may exclude relevant

7

1 | evidence if its probative value is *substantially* outweighed by a

2 | danger of . . . *unfair* prejudice . . .[and] wasting time."  Fed. R.

3 | Evid. 403 (emphases added).  Notably, Rule "403 favors

4 | admissibility."  <u>United States v. Hankey</u>, 203 F.3d 1160, 1172 (9th

5 | Cir. 2000); <u>see also</u> <u>United States v. Valesquez</u>, 64 F.3d 844, 849 (3d

6 | Cir. 1995) (noting a "strong and undeniable preference for admitting

7 | any evidence having some potential for assisting the trier of fact")

8 | (quotation omitted)).  "The district court has broad discretion to

9 | admit potentially prejudicial evidence under Rule 403."  <u>United</u>

10 | <u>States v. Rizk</u>, 660 F.3d 1125, 1132 (9th Cir. 2011).  Excluding

11 | evidence under FRE 403 is an "extraordinary remedy to be used

12 | sparingly because it permits the trial court to exclude otherwise

13 | relevant evidence."  <u>United States v. Patterson</u>, 819 F.2d 1495, 1505

14 | (9th Cir. 1987) (quoting <u>United States v. Meester</u>, 762 F.2d 867, 875

15 | (11th Cir. 1985)); <u>see also</u> <u>United States v. Dodds</u>, 347 F.3d 893, 897

16 | (11th Cir. 2003) ("we have also recognized that Rule 403 is an

17 | extraordinary remedy which the district court should invoke

18 | sparingly, and the balance ... should be struck in favor of

19 | admissibility.") (internal quotations omitted).

20 |      As the Ninth Circuit recognized,

21 |      Relevant evidence is inherently prejudicial; but it is
   |      only unfair prejudice, substantially outweighing
22 |      probative value, which permits exclusion of relevant
   |      matter under Rule 403.  Unless trials are to be
23 |      conducted as scenarios, or unreal facts tailored and
   |      sanitized for the occasion, the application of Rule 403
24 |      must be cautious and sparing.  Its major function is
   |      limited to excluding matter of scant or cumulative
25 |      probative force, dragged in by the heels for the sake of
   |      its prejudicial effect.

26 |

27 | <u>Hankey</u>, 203 F.3d at 1172 (quoting <u>United States v. Mills</u>, 704 F.2d

28 | 1553, 1559 (11th Cir. 1983)).  "Unfair" prejudice under Rule 403

1  "means an undue tendency to suggest decision on an improper basis,

2  commonly, though not necessarily, an emotional one."  Fed. R. Evid.

3  403, Commentary.

4      The strong measure of excluding probative evidence under Rule

5  403 is unwarranted in this case.  The government must be permitted to

6  prove its case with relevant evidence, even if that evidence is

7  inherently prejudicial.  See Hankey, 203 F.3d at 1172.  The

8  government must prove that defendant acted knowingly and willfully.

9  Evidence that he was conspiring with individuals and Chinese

10  government entities to violate United States export controls is

11  highly relevant to the question of the defendant's knowledge and

12  intent when he conspired to violate the export laws, concealed

13  foreign bank accounts, fraudulently sought access to a United States

14  company's computers and MMICs, laundered money, and lied to the FBI

15  about his activities in China.  Expert testimony and other evidence

16  regarding the entities in the indictment and modus operandi of the

17  Chinese government to obtain restricted United States items will be

18  tied to the evidence in the case, including defendant's own

19  documents.  The experts' testimony and other evidence seek simply to

20  illuminate for the jury unfamiliar areas to place the evidence in

21  proper context in furtherance of the trial's truth-seeking purpose

22  and is plainly properly admitted in this case.

23      Additionally, with a twenty-day defense case trial estimate, the

24  defendant is expected to contest that he performed the acts alleged

25  in the indictment with the requisite knowledge and mental state to

26  violate the law.  Defendant claims in his motions that his "business

27  dealings in China" were "lawful." (Mot. 4 at 2.)  Defendant's

28  Disputed Proposed Post-Trial Jury Instructions contain multiple

1 | apparent defenses speaking to a wide-range of topics, including,

2 | _inter alia_, that technology was already published or educational

3 | (Def. Disp. Post-Trial Jury Inst. dkt. 309 at 9-11, 14), university-

4 | based "fundamental research" or business-based "fundamental research"

5 | not subject to "specific national security controls" (id. at 12-13),

6 | included in a patent application prepared "to be executed and

7 | returned to the United States for subsequent filing in the U.S.

8 | Patent and Trademark Office" (id. at 15), "specially designed for

9 | telecommunications purposes" (id. at 16), and not included in various

10 | other license exceptions (id. at 17-19).  Defendant also seeks a

11 | "good faith" instruction with respect to the tax charge.  (Id. at

12 | 35.)  While the government submits these are improper jury

13 | instructions, they demonstrate defendant's intent to try to convince

14 | the jury he did not have the knowledge or intent to commit the

15 | charged crimes.  Expert testimony is needed to assist the jury to

16 | understand and evaluate the evidence showing that defendant was

17 | operating in China with Chinese government entities to obtain

18 | restricted United States technology.

19 | Defendant wants to claim his actions were innocent, while

20 | preventing the government from presenting evidence relevant to his

21 | guilt.  The Ninth Circuit warned against this type of improper

22 | "sanitation" of trials.  Hankey, 203 F.3d at 1172.  Any prejudice

23 | incurred is entirely appropriate: "[r]elevant evidence is inherently

24 | prejudicial."  Id.  Further, Rule 403 does not operate to require

25 | that a trial be "scrub[bed] . . . clean of all evidence that may have

26 | an emotional impact."  United States v. Ganoe, 538 F.3d 1117, 1124

27 | (9th Cir. 2008) (quoting United States v. Morales-Aldahondo, 524 F.3d

28 | 115, 120 (1st Cir. 2008)).  See also, e.g., United States v. Dhingra,

1   371 F.3d 557, 565-66 (9th Cir. 2004) (finding that evidence of

2   conduct that "may be disturbing to some members of the jury does not

3   mean that Rule 403 precludes its admission.").

4        As described above, the information is directly illustrative of

5   defendant's motive, intent, capabilities, and knowledge of, and role

6   in, an ongoing conspiracy and the other charged crimes.  Defendant's

7   political rhetoric and general objections that the evidence is

8   "inflammatory" does not render it substantially unfair.  Certainly,

9   the evidence is not being "dragged in by the heels for the sake of

10  [its] prejudicial effect."  Hankey, 203 F.3d at 1172.  It is offered

11  for its direct substantive relationship to the crimes.

12       The Court should reject defendant's claim that the information

13  is "entirely unrelated to the case at hand," and should be excluded

14  because it would waste time.  (Mot. 3 at 5.)  The government intends

15  only to introduce evidence that is *relevant* and *related* to the case

16  at hand.  Its probative value substantially outweighs any concerns

17  about time.  Defendant's reliance on United States v. Scholl, 166

18  F.3d 964, 974 (9th Cir. 1999), is misplaced.  In Scholl, the court

19  excluded expert testimony because it was duplicative of other

20  evidence and testimony.  Id.  Here, defendant seeks to exclude *all*

21  testimony and evidence on the topic.

22  **III. DEFENDANT'S FIFTH AMENDMENT ARGUMENT FAILS**

23       Defendant's Fifth Amendment claim is unavailing.  Defendant

24  makes a bald assertion that the challenged expert testimony will

25  violate his Fifth Amendment right to a fair trial, "by encouraging

26  the jury to consider [defendant's] guilt or innocence in light of his

27  race."  (Mot. 3 at 6-8.)  Not so.  The expert testimony defendant

28

11

1  seeks to exclude does not appeal to racial or ethnic generalizations

2  or bias.

3       The two cases upon which defendant relies are distinguishable on

4  their facts.  (Mot. 3 at 6-7.)  Both involved evidence about the drug

5  trafficking practices of certain countries or ethnic groups.  The

6  evidence was improper because it consisted of ethnic generalizations

7  not tied to the evidence in the case.  See United States v. Cabrera,

8  222 F.3d 590, 596 (9th Cir. 2000) ("repeated references to Cuban drug

9  dealers had the cumulative effect of putting the Las Vegas's Cuban

10  community on trial, rather than sticking to the facts of [the] drug

11  offenses"); United States v. Nobari, 574 F.3d 1065, 1076 (9th Cir.

12  2009) (finding the district court abused its discretion by admitting

13  argument about "ethnic generalizations," but finding the error

14  harmless).  In contrast here, the government intends to introduce

15  evidence about the government of the PRC and the entities named in

16  the evidence -- not generalized ethnic representations.

17  **IV.   CONCLUSION**

18       For the foregoing reasons, defendant's motions in limine nos. 3

19  and 4 should be denied.

20

21

22

23

24

25

26

27

28