1  NICOLA T. HANNA
   United States Attorney
2  PATRICK R. FITZGERALD
   Assistant United States Attorney
3  Chief, National Security Division
   JUDITH A. HEINZ (Cal. Bar No. 176264)
4  Assistant United States Attorney
   Senior Litigation Counsel, National Security Division
5  JAMES C. HUGHES (Cal. Bar No. 263878)
   Assistant United States Attorney
6  Tax Division
   MELANIE SARTORIS (Cal. Bar No. 217560)
7  WILLIAM M. ROLLINS (Cal. Bar No. 287007)
   Assistant United States Attorneys
8  Terrorism and Export Crimes Section
   KHALDOUN SHOBAKI (Cal. Bar No. 232864)
9  Assistant United States Attorney
   Cyber & Intellectual Property Crimes Section
10      1500 United States Courthouse
        312 North Spring Street
11      Los Angeles, California 90012
        Telephone:     (213) 894-7280/5615/7407/0759
12      Facsimile:     (213) 894-2927
        E-mail:    judith.heinz@usdoj.gov
13                 james.hughes2@usdoj.gov
                   melanie.sartoris@usdoj.gov
14                 william.rollins@usdoj.gov
                   khaldoun.shobaki@usdoj.gov
15
   Attorneys for Plaintiff
16 UNITED STATES OF AMERICA

17              UNITED STATES DISTRICT COURT

18          FOR THE CENTRAL DISTRICT OF CALIFORNIA

19 UNITED STATES OF AMERICA,           No. CR 18-50(B)-JAK

20          Plaintiff,                 GOVERNMENT'S STATEMENT RE COMMERCE
                                       CONTROL LIST AND ENTITY LIST IN
21          v.                         RESPONSE TO COURT'S ORDER (DKT.
                                       374); MEMORANDUM OF POINTS AND
22 YI-CHI SHIH,                        AUTHORITIES; EXHIBITS
     aka "Yichi Shih,"
23   aka "Yuqi Shi," et al,            Hearing Date: April 18, 2019
                                       Hearing Time: 8:30 a.m.
24          Defendants.                Location:     Courtroom of the
                                                     Hon. John A.
25                                                   Kronstadt

26

27      Plaintiff United States of America, by and through its counsel

28 of record, the United States Attorney for the Central District of

1    California and Assistant United States Attorneys Judith A. Heinz,

2    James C. Hughes, Melanie Sartoris, William M. Rollins, and Khaldoun

3    Shobaki, hereby files its statement, in response to the Court's order

4    (Dkt. 374), describing what it intends to introduce at trial about

5    the Commerce Control List/Commerce Country Chart and the Entity List.

6         This statement is based upon the attached memorandum of points

7    and authorities, the files and records in this case, and such further

8    evidence and argument as the Court may permit.

9    Dated: April 11, 2019              Respectfully submitted,

10                                      NICOLA T. HANNA
                                        United States Attorney
11
                                        PATRICK R. FITZGERALD
12                                      Assistant United States Attorney
                                        Chief, National Security Division
13
                                        /s/ *Judith A. Heinz*
14                                      _____
                                        JUDITH A. HEINZ
15                                      JAMES C. HUGHES
                                        MELANIE SARTORIS
16                                      WILLIAM M. ROLLINS
                                        KHALDOUN SHOBAKI
17                                      Assistant United States Attorney

18                                      Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA
19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    Introduction

3    The Second Superseding Indictment charges defendant Yi-Chi Shih

4  ("defendant") and six named co-defendants with knowingly and

5  willfully conspiring to violate the International Emergency Economic

6  Powers Act ("IEEPA") in four ways:

7        1.    conspiring to export items from the United States to the

8  People's Republic of China ("PRC") without having first obtained the

9  required licenses from the Department of Commerce ("DOC"),

10        2.    conspiring to export items from the United States to

11  Chengdu Gastone Technology Co., Ltd. ("CGTC") without having first

12  obtained the required licenses from the DOC,

13        3.    conspiring to export items from the United States to the

14  PRC without filing Electronic Export Information ("EEI") through the

15  Automated Export System ("AES"), and

16        4.    conspiring to export items from the United States to CGTC

17  without filing EEI through the AES.  (Dkt. 223, at 2-29.)

18        With respect to ways 1 and 2 above, the government must prove

19  the conspirators agreed:

20        • to export an item from the United States to the PRC

21          without having first obtained the required license (way

22          1); **OR**

23        • to export an item from the United States to CGTC without

24          having first obtained the required license (way 2).

25

26

27

28

1   The license requirement referenced in ways 1 and 2 stems from two

2   different sources: (1) the Commerce Control List in coordination with

3   the Commerce Country Chart (way 1), and (2) the Entity List (way 2).[1]

4        In response to the Court's order (Dkt. 374), the government

5   describes below what evidence it intends to introduce at trial about

6   the Commerce Control List/Commerce Country Chart and the Entity List

7   and their purposes, including anticipated evidence about the context

8   for why these lists are created.  (See Dkt. 374, at 2.)  The

9   government does not include in this statement evidence about these

10  lists that was seized from defendant's e-mail accounts, residence,

11  and digital devices that it intends to introduce to prove defendant's

12  knowledge and willfulness.

13  **II.  The Purposes of the Export Control Provisions of the Export
        Administration Regulations**

14

15       To provide context for the jury to understand the export control

16  provisions, the government intends to introduce some testimony

17  regarding their purpose, consistent with those purposes as stated in

18  the Export Administration Regulations ("EAR").  The EAR states, "The

19  export control provisions of the EAR are intended to serve the

20  national security, foreign policy, non-proliferation of weapons of

21  mass destruction, and other interests of the United States, which in

22  many cases are reflected in international obligations or

_____

[1] With respect to ways 3 and 4 above, the government must prove
the conspirators agreed:

- to export an item from the United States to the PRC
  without filing EEI through the AES (way 3); **OR**
- to export an item from the United States to CGTC without
  filing EEI through the AES (way 4).

The EEI filing requirement referenced in ways 3 and 4 has two
different sources: (1) the value of the item being exported, and/or
(2) the existence of a licensing requirement.

arrangements."  15 C.F.R. § 730.6.  The EAR states further, "Some controls are designed to restrict access to items subject to the EAR by countries or persons that might apply such items to uses inimical to U.S. interests."  (Id.)  The EAR continues, "These include controls designed to stem the proliferation of weapons of mass destruction and controls designed to limit the military and terrorism support capability of certain countries."  (Id.)

## III.    Commerce Control List/Commerce Country Chart Evidence

To prove the licensing requirement, the government intends to introduce testimony about one of the ways exports are controlled -- the Commerce Control List in coordination with the Commerce Country Chart.  The U.S. Company B Monolithic Microwave Integrated Circuit Amplifiers ("MMICs") that defendant and his coconspirators obtained in December 2013 were controlled for export.  Specifically, a license from the DOC was required before they could be exported lawfully from the United States to the PRC.  The basis for the license requirement was the Commerce Control List and the Commerce Country Chart, both of which are contained in the EAR.

The Commerce Control List "includes items (i.e., commodities, software, and technology) subject to the export licensing authority of [the Bureau of Industry and Security]."  15 C.F.R. § 738.1(a)(1).  The Commerce Control List (15 C.F.R. Pt. 774, Supp. 1) is organized by categories and Export Control Classification Numbers.  Category 3 of the Commerce Control List contains licensing control information for electronics.  Export Control Classification Number ("ECCN") 3A001.b.2 contains the licensing control information for MMICs.

1    (Exh. A.)[2]   As Exhibit A shows, MMICs are controlled for export based

2    on frequency range, fractional bandwidth, and peak saturated power

3    output.

4         The licensing control information in the Commerce Control List

5    is coordinated with the Commerce Country Chart, which "contains

6    licensing requirements based on destination and Reason for Control."

7    15 C.F.R. § 738.1(a)(1); (see Exh. B).[3]   The Reasons for Control that

8    applied to the U.S. Company B MMICs obtained by defendant in December

9    2013 were Anti-Terrorism, National Security, and Regional Stability.

10   (See Dkt. 335, Exh. C.)[4]   An exporter must consult the Commerce

11   Control List to determine any potential item-specific licensing

12   requirement, and then cross-reference with the Commerce Country Chart

13   to determine any country destination-specific licensing requirement.

14   The Reasons for Control in the Commerce Country Chart further inform

15   the exporter as to the applicability of any exceptions to the

16   licensing requirement.   In combination with the Commerce Control List

17   ("CCL"), the Commerce Country Chart allows the public to determine

18   whether a license is required for the export of items on the CCL to

19   any country in the world.   15 C.F.R. § 738.1(b).

20        In December 2013, defendant and his coconspirators obtained from

21   U.S. Company B four identical wafers that contained multiple MMICs,

22

23        [2] Attached hereto as government exhibit A is a true copy of the
     section of the Commerce Control List that pertains to MMICs.

24        [3] Attached hereto as government exhibit B is a true copy of
     Commerce County Chart obtained from Westlaw.
25

26        [4] For the Court's convenience, attached hereto as government
     exhibit C are true copies of the relevant licensing determinations
     made by Licensing Officer Carlos Monroy.   These licensing
27   determinations list both the ECCN number and the Reasons for Control.
     These licensing determinations were previously filed with the Court
28   as Exhibit B, to Dkt. 335.

                                    4

1  many of which were controlled for export based on their frequency

2  range, fractional bandwidth, and peak saturated power output.    To

3  prove that a license from the DOC was required to export from the

4  United States to the PRC these MMICs, the government will introduce

5  at trial the testimony of a DOC licensing officer (Carlos Monroy).[5]

6  The government expects that the DOC licensing officer will testify

7  about the purpose, structure, and application of the EAR, including

8  the Commerce Control List and the Commerce Country Chart (including

9  the Reasons for Control), consistent with the above paragraphs.    The

10 government expects that the DOC licensing officer will also testify

11 consistent with his attached licensing determinations (Exh. C) and

12 the expert witness notices disclosed to the defense and filed

13 previously with the Court.    (See Dkt. 335, Exh. B, at 47-55; Dkt.

14 339-1, Exh. A, at 4; Dkt. 339-3, Exh. C, at 3; Dkt. 339-4, Exh. D, at

15 3.)    Based on defendant's motions in limine, his proposed jury

16 instructions, and his counsel's representations during court

17 appearances, the government expects defendant will vigorously contest

18 the application of the EAR to the items defendant and his

19 coconspirators exported and conspired to export from the United

20 States to the PRC.    Therefore, a complete explanation of the EAR by a

21 DOC licensing officer is essential for the jury to be able to

22 understand the evidence, and intelligently apply the law to the

23 facts.

24

25

26

27      [5] The government will also introduce the testimony of
   Christopher D. Nordquist, Ph.D., who will testify about the MMICs'
28 frequency range, fractional bandwidth, and peak saturated power
   output.

5

1  **IV.  Entity List Evidence**

2  In March 2015, defendant and his coconspirators obtained from

3  U.S. Company B an additional four wafers, containing multiple MMICs.

4  All of the MMICs on these wafers were controlled for export from the

5  United States to CGTC because CGTC and its associated entities --

6  QTC, CETC 29, and Tian Hung -- had been placed on the Entity List

7  eight months earlier, on August 1, 2014.[6]  To prove a DOC license had

8  to be obtained prior to the export of these MMICs, the government

9  intends to introduce testimony and exhibits about another way exports

10  are controlled -- the Entity List.

11  To prove this license requirement, the government intends to

12  introduce at trial (1) copies of the attached Federal Register

13  publications,[7] and (2) testimony by a DOC licensing officer to

14  establish the following:

15  1.  The Entity List is a list on which foreign entities

16  (including individuals and companies) are placed after a formal

17  multi-agency review of information.[8]  The criteria for adding an

18  entity, or those acting on behalf of an entity, to the Entity List is

19  reasonable cause to believe, based on specific and articulable facts,

20

21  _____

22  [6] As alleged in the Second Superseding Indictment, CGTC built a
semiconductor fabrication plant to manufacture MMICs -- the same

23  technology that defendant conspired to export from the United States
to the PRC illegally.  QTC and CETC 29 financed CGTC's operations.
Both before and after CGTC, QTC, and CETC 29 were placed on the

24  Entity List, defendant was the President and a Technical Consultant
at CGTC.  Co-defendant Jieru Deng was a QTC General Manager and a

25  Vice-President/General Manager at Tian Hang.

26  [7] For the Court's convenience, attached hereto as government
exhibit D are true copies of the Federal Register publications.

27  These Federal Register publications were previously filed with the
Court as Exhibit A, to Dkt. 335.

28  [8] See 15 C.F.R. § 744 Supp. No. 4.

6

that the entity has been involved, is involved, or poses a significant risk of being or becoming involved, in activities that are contrary to the national security or foreign policy interests of the United States.[9]

2.    On August 1, 2014, the United States government placed the following entities, among others, on the Entity List:

- Chengdu Gastone Technology Co., Ltd. ("CGTC"), in Chengdu, China;

- Qing'an International Trading Group, also known as Qing'an International Trading Group Company ("QTC"), in Beijing, China;

- China Electronics Technology Group Corporation 29 Research Institute, aka CETC 29th Research Institute, and China Southwest Electronic Equipment Research Institute (SWIEE) ("CETC 29"), in Chengdu, China; and

- Tian Hang Yang Pu Technology Investment Ltd. Co. ("Tian Hang") in Beijing, China.

These four entities were placed on the Entity List on the basis of their involvement in activities contrary to the national security and foreign policy interests of the United States -- specifically, the multi-agency committee determined it had reasonable cause to believe that all four companies had been involved in the illicit procurement of commodities and technologies for unauthorized military end use in China.[10]  These four entities, CGTC, QTC, CETC 29, and Tian Hang, have been on the Entity List continuously from August 1, 2014 to the present.

---

[9] 15 C.F.R. § 744.11(b).

[10] See 79 FR 44684 (Aug. 1, 2014).

7

3.    On March 21, 2016, the United States government modified
the Entity List to add the alias "Chengdu Jiashi Technology Co." to
the entity listing for CGTC.[11]

4.    On August 1, 2018, the United States government modified
the Entity List to add the additional alias "Chengdu HiWafer
Semiconductor" to the entity listing for CGTC.[12]

5.    For CGTC, QTC, CETC 29, and Tian Hang, placement on the
Entity List imposed the requirement that a license be obtained from
the United States Department of Commerce, Bureau of Industry and
Security prior to the export, reexport, or transfer (in-country) of
any item subject to the Export Administration Regulations, and denial
of such a license was, and is, presumed.[13]  The license requirements
apply to any transaction in which items are to be exported,
reexported, or transferred (in-country) to CGTC, QTC, CETC 29, or
Tian Hang or in which any of these four entities act as purchaser,
intermediate consignee, ultimate consignee, or end-user.  In
addition, no license exceptions have been available since August 1,
2014, for exports, reexports, or transfers (in-country) to any of
these four entities.

The parties conferred about a stipulation covering the facts set
forth in paragraphs 1-5 above but were unable to reach agreement.
Given the depth of the dispute, and defendant's apparent intention to
contest the consequences of placement on the Entity List, the
government expects that a complete explanation of the Entity List by
the DOC licensing officer, as well as the introduction of the Federal

---

[11] See 81 FR 14957 (Mar. 21, 2016).

[12] See 83 FR 37426 (Aug. 1, 2018).

[13] See 79 FR 44684 (Aug. 1, 2014).

8

1   Register publications, will be necessary for the jury to be able to

2   understand, and make informed judgments about, the evidence.

3   **V.    Additional Evidence Regarding the Commerce Control List and the
    Entity List Relevant to Defendant's Knowledge and Willfulness**

4

5       The government has not included in this statement a description

6   of the evidence referencing the Commerce Control List and the Entity

7   List that was seized from defendant's e-mail accounts, residence, and

8   digital devices.  The government intends to introduce this evidence

9   at trial to prove defendant's knowledge and willfulness -- his

10  knowledge of export regulations and his knowledge that his conduct

11  was unlawful.  The government previously filed examples of this

12  evidence with the Court.  (See Dkt. 335, Exhs. C, D, E, and F.)

13  **VI.   Conclusion**

14      The government respectfully requests that this Court GRANT the

15  government's motions in limine numbers one and two, and DENY

16  defendant's motion in limine number 5.

17

18

19

20

21

22

23

24

25

26

27

28